IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ETHAN SHIPLER, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. JFM 08-2057 |
| | * | |
| KEVIN M. MAXWELL, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | ***** | |

## MEMORANDUM

Ethan Shipler ("Ethan") and his parents, Jonathan and Glynis Shipler ("the Shiplers"),
(collectively "Plaintiffs") bring suit against Kevin M. Maxwell, the superintendent of Anne
Arundel County Public Schools ("AACPS"), and the Anne Arundel County Board of Education
(collectively "Defendants") alleging violations of the Individuals with Disabilities Act
("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983;
and Maryland law.  Plaintiffs claim Defendants failed to provide Ethan a free appropriate public
education ("FAPE").  Plaintiffs seek reimbursement of tuition and costs incurred in enrolling
Ethan in a private school for the 2007-2008 school year, along with other declaratory relief.

The Administrative Law Judge ("ALJ") below dismissed Plaintiffs' complaint due to
Plaintiffs' alleged failure to provide AACPS with notice of their intent to withdraw their son
from AACPS and enroll him in a private school.  The parties have filed cross-motions for
summary judgment.  As the issues have been fully briefed, no hearing is necessary.  Local Rule
105.6.  For the reasons that follow, Plaintiffs' motion for summary judgment is denied and
Defendants' motion for summary judgment is granted in part and denied in part.  The action is

remanded for further proceedings at the administrative level.

## I.

The facts of this case are largely undisputed and, unless otherwise noted, have been drawn primarily from the ALJ decision.  Ethan Shipler, now nine years old, has been diagnosed with profound oral and motor delays.  He attended kindergarten at Hillsmere Elementary School ("HES") during the 2006-2007 school year.  On August 9, 2006, the Shiplers requested that an Individualized Educational Program[1] ("IEP") meeting be held to conduct a disability screening of Ethan.  AACPS conducted several educational assessments and found Ethan eligible to receive special education and related services.  An IEP meeting was held on December 12, 2006, and an IEP was developed and approved by the Shiplers on December 19, 2006.  The Shiplers allege that, despite the services in his IEP, Ethan experienced significant difficulty at HES. (Pls.' Mem. Supp. Mot. for Summ. J. ("Pls.' Mem.") 3.)  On May 29, 2007, the Shiplers requested an IEP meeting for Ethan, which was then held on June 13, 2007.  The IEP team concluded that Ethan had not yet mastered any of his IEP goals and, at the Shiplers' request, AACPS agreed to conduct additional evaluations of Ethan.  (*Id.* 4.)  The Shiplers allege they notified the IEP team at this meeting that they no longer felt HES was an appropriate placement for Ethan, and that they would be exploring non-public options for the fall.  (*Id.*)  Defendants contend that the Shiplers did not notify the IEP team that they were planning on enrolling Ethan at a private school for the 2007-2008 school year or that they would be seeking tuition

---

[1] An IEP is a written education plan intended to address the unique needs of a student identified as eligible for special education services.  The plan is designed by the school district in consultation with the parents of the student.  *See* 20 U.S.C. §§ 1412(a)(4), 1414(d).

2

reimbursement from AACPS.  (Defs.' Mem. Supp. Defs.' Opp'n to Pls.' Mot. for Summ. J. and

Cross-Mot. for Summ. J. ("Defs.' Mem.") 2.)  The ALJ found that the Shiplers did not provide

notice of their intent to seek public funding for their enrollment of Ethan at RCS to AACPS until

December 14, 2007.  (Admin. Ruling on Mots. for Summ. Decision 9.)

On June 15, 2007, the Shiplers signed an enrollment contract with a private school,

Radcliffe Creek School ("RCS"), reserving a space for Ethan for the 2007-2008 school year.

Under the contract, the Shiplers are responsible for the "entire tuition for the full academic year .

. . notwithstanding the subsequent absence, dismissal or withdrawal of the student for any

reason."  (Admin. Ruling on Mots. for Summ. Decision Ex. 8.)  The Shiplers funded Ethan's

placement at RCS.

The additional AACPS evaluations of Ethan were completed during the summer of 2007,

and an IEP meeting was scheduled for August 9, 2007 to discuss the results.  Several scheduling

conflicts for both sides caused the meeting to be postponed until September 12, 2007, a date

proposed by the Shiplers.

The HES school year began August 27, 2007.  Ethan was not in attendance that day or

any other day during the 2007-2008 HES school year.  On or about August 28, 2007, the

principal of HES called Mrs. Shipler to inquire about Ethan's attendance.  Mrs. Shipler informed

the principal that Ethan would not be attending HES that year and that any further inquiries

should be directed to the Shiplers' lawyer.  Mrs. Shipler made no comment during this

conversation about the ability of HES to provide Ethan a FAPE or about seeking reimbursement

for private school tuition.

On August 30, 2007, the principal received a letter from the Shiplers requesting that

AACPS continue Ethan's IEP process.  The letter did not mention the Shiplers' intention to seek

tuition reimbursement for their unilateral private school placement of Ethan.  Ethan began

attending RCS in September 2007.

Several IEP meetings were held during the fall of 2007, concluding with a finalized IEP

on December 14, 2007, recommending placement at HES.  The Shiplers rejected the proposed

placement and requested Ethan be placed at RCS at AACPS's expense.  AACPS rejected the

Shiplers' request.  The ALJ found that at no point prior to December 14, 2007 did the Shiplers

inform the IEP team that they were rejecting AACPS's proposed placement, nor did they state

their concerns or express their intent to enroll Ethan at RCS at public expense.

The ALJ denied the Shiplers' request that AACPS fund Ethan's placement at RCS for the

2007-2008 school year because she found that the parents failed to provide AACPS with the

notice required by the IDEA.[2]  *See* 20 U.S.C. § 1412(a)(10)(C)(iii).  The Shiplers filed a motion

for reconsideration, which was also denied, and then appealed the ALJ's decision to this court.


## II.

A summary judgment motion should be granted when the record establishes that there is

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A material fact is one that may affect the outcome of the suit.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

"genuine" if the "evidence is such that a reasonable jury could return a verdict for the

---

[2] *Ethan Shipler v. Anne Arundel County Public Schools*, OAH No. MSDE-AARU-OT-08-00835.

nonmoving party." *Id.* "When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

A district court reviewing an ALJ's decision in an IDEA action must make an "independent decision[] based on a preponderance of the evidence." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 205 (1982) (internal quotations omitted). However, the court must also give "due weight" to the ALJ's determinations and must not "substitute [its] own notions of sound educational policy for those of the school authorities which [it]  review[s]." *Id.* at 206.  "Administrative findings in an IDEA case are entitled to be considered *prima facie* correct, and the district court, if it is not going to follow them, is required to explain why it does not." *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1000-01 (4th Cir. 1997) (internal quotations omitted).

The burden of proving in an IDEA action that a state hearing officer's decision was erroneous rests with the party challenging the decision. *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991).  Because Plaintiffs in the present case challenge the administrative decision below, they bear the burden of proof.

## III.

## A.

The IDEA was enacted "to ensure that all children with disabilities are provided a free appropriate public education which emphasizes special education and related services designed

to meet their unique needs and to assure that the rights of such children and their parents or guardians are protected." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. ___, 2009 U.S. LEXIS 4645, at *16 (June 22, 2009) (internal quotations omitted).  The IDEA provides federal funding to state and local educational agencies to implement its substantive and procedural requirements, including the provision of IEPs for students within its coverage.  *See School Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

The IDEA includes extensive "procedural safeguards" for parents of a disabled child to insure the parents' full participation in the IEP process as well as the proper resolution of substantive disagreements.  *Id.* at 369.  If a child's parents are dissatisfied with a proposed IEP, they may request a due process hearing before an impartial hearing officer to challenge the proposed IEP and if either party is dissatisfied with the hearing officer's decision, that party may seek judicial review in state or federal court.  *Id.* at 369.

The IDEA contemplates that children with disabilities will be educated alongside children without disabilities.  Special classes, separate schooling, or other removal of disabled children should only occur when education in a regular educational environment cannot be satisfactorily achieved.  20 U.S.C. § 1412(a)(5)(A).  The IDEA provides for placement at private schools at public expense when necessary to ensure the receipt of a FAPE.[3]  *See* 20 U.S.C. §§

---

[3] The IDEA defines a FAPE as special education and related services provided at public expense, under public supervision and direction.  The FAPE must meet state educational agency standards, must include appropriate preschool, elementary school, or secondary education in the state involved, and must be provided in conformity with the required IEP.  20 U.S.C. § 1401(9).  The Fourth Circuit has stated that:

> [T]he appropriate education required by the IDEA should not be confused 'with the best possible education. . . .  And once a FAPE is offered, the school district need not offer additional educational services.  That is, while a state must provide specialized instruction and related services sufficient to confer some educational benefit upon

1412(a)(10)(B) and (C).  However, the right to public funding for placement at a private school

is limited when the parents make the private placement decision unilaterally.  The IDEA states,

in relevant part:

> (C) Payment for education of children enrolled in private schools without consent of or referral by the public agency.
> (i) In general.  Subject to subparagraph (A), this part does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
> (ii) Reimbursement for private school placement.  If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.
> (iii) Limitation on reimbursement.  The cost of reimbursement described in clause (ii) may be reduced or denied–
> (I) if–
> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa); . . . .

20 U.S.C. § 1412(a)(10)(C).  Therefore, "when a public school fails to provide a FAPE and a

child's parents place the child in an appropriate private school without the school district's

consent, a court may require the district to reimburse the parents for the cost of the private

---

the handicapped child, the Act does not require the furnishing of every special service necessary to maximize each handicapped child's potential.'
*Fairfax County Sch. Bd. v. Knight*, 261 Fed. Appx. 606, 607-08 (4th Cir. 2008) (*quoting MM ex rel. DM v. Sch. Dist.*, 303 F.3d 523, 526-27 (4th Cir. 2002)).

education." *Forest Grove Sch. Dist.*, 2009 U.S. LEXIS 4645, at *5.  However, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, do so at their own financial risk." *Burlington*, 471 U.S. at 373-74.  If the proposed IEP is ultimately determined by the courts to be appropriate, the parents will not be reimbursed for the unilateral private placement of their child.  *Id.* at 374.

**B.**

In the present case, the parties dispute first whether the Shiplers complied with the notice provision of the IDEA.  The parties then dispute whether, if the appropriate notice was not provided, it is within this court's discretion, upon consideration of the equities, to grant the Shiplers' claim for reimbursement despite their failure to provide notice.  Lastly, the parties dispute whether, even if the Shiplers are denied reimbursement for their failure to provide notice, they may still be entitled to relief if AACPS's proposed IEP would not provide Ethan with a FAPE.  I will address each of these disputed issues in turn.

**(1.)**

The IDEA allows the reduction or denial of reimbursement if the parents failed to either reject the proposed IEP at the most recent IEP meeting attended by the parents before removal of the child from public school or give written notice ten business days prior to the removal.  20 U.S.C. § 1412(a)(10)(C)(iii)(I).  Either form of notice must include a statement of the parents' concerns and their intent to enroll their child in a private school at public expense.  *Id.*  The Shiplers failed to provide either form of notice before December 14, 2007.

It is undisputed that the Shiplers' enrollment of Ethan at RCS was without referral by, or consent from, AACPS.  The Shiplers do not contest the ALJ's finding that they failed to provide

written notice by August 13, 2007 (ten business days prior to the start of the school year at HES) or oral notice at the most recent IEP meeting before the Shiplers' removal of Ethan from HES, held June 13, 2007. The Shiplers state that they "advised the school system back in June of 2007 that they were exploring private schools and told the Hillsmere Principal during the first week of school, before Ethan even began at Radcliffe Creek, that Ethan would not be attending Hillsmere for the 2007-2008 year." (Pls.' Mem. 9.) The Shiplers' mentioning that they were exploring private schools clearly does not satisfy the notice requirement of the IDEA, nor does informing the principal of the unilateral private placement after the beginning of the school year at HES.

The Shiplers assert that their failure to give notice that they were rejecting AACPS's proposed placement before the start of the HES school year is justified because, until December 14, 2007, there was no proposed placement to reject. (Pls.' Mem. 9.) They allege that they gave notice of their rejection and their intent to seek funding for Ethan's private placement as soon as the proposed IEP was completed in December 2007. (*Id.* 14.) The Shiplers assert that they cannot be penalized for cooperating in the ongoing IEP process during the summer and fall of 2007, and then providing notice at the end of that process. (*Id.* 9.) However, unlike in the cases relied on by the Shiplers, there was already an IEP in place for Ethan. *See, e.g.*, *Sandler v. Hickey*, 5 Fed. Appx. 233 (4th Cir. 2001) (unpublished) (remanding and allowing the parents to seek reimbursement despite their failure to notify the school board of their unilateral private placement when no IEP had yet been proposed); *Bd. of Educ. v. Brie R.*, CA AW-98-3161 (Mem. Op. June 30, 1999) (unpublished) (allowing the parents to seek tuition reimbursement without providing notice because there was no substantive IEP proposal in place to respond to before the beginning of the school year). Although Ethan's IEP team was in the process of reviewing and

revising the December 2006 IEP, this did not prevent the Shiplers from notifying the school of their intent to and reasons for unilaterally placing Ethan in a private school and seeking public funding for the placement.

I find that the Shiplers failed to comply with the notice provision of the IDEA.  I now turn to the question of whether the equities in this case call for tuition reimbursement despite the Shiplers' procedural failure.

## (2.)

The Shiplers contend that even if they failed to comply with the IDEA's notice provision, the court may still exercise its discretion and award full or partial reimbursement.[4]  (Pls.' Mem. 14.)  The IDEA states that the cost of reimbursement for private placement "*may* be reduced or denied" in certain circumstances, including failure by the parents to give proper notice of their rejection of a proposed IEP.  20 U.S.C. § 1412(a)(10)(C)(iii) (emphasis added).  Use of the word "may" instead of "shall" indicates that denial or reduction is discretionary.  Similarly, the words "reduced or denied" also indicate that Congress intended the analysis to be discretionary.  *See Ashland Sch. Dist. v. Parents of Student E.H.*, 583 F. Supp. 2d 1220, 1226 (D. Or. 2008).  This finding comports with the general remedial purpose of the IDEA and other provisions permitting

---

[4] The Shiplers argue that AACPS has failed to show that it suffered an adverse impact from the Shiplers' procedural violation, and that, without such a showing, the Shiplers should not be denied reimbursement on the basis of their procedural violation.  (Pls.' Mem. 15.)  This argument is not persuasive and has been rejected in earlier cases.  *See, e.g.*, *Pollowitz v. Weast*, 90 Fed. Appx. 438, 443 (4th Cir. 2001) (unpublished) (holding that when the parents failed to provide timely notice of their rejection of the proposed IEP, the school system was not required to demonstrate prejudice in order to bar the parents' claim for reimbursement); *Watts v. Smith*, Civil No.: WDQ-05-CV-501, 2006 U.S. Dist. LEXIS 97460, at *10 (D. Md. Jan. 5, 2006) (unpublished) ("AACPS is not required to show prejudice or harm from the Wattses' failure to comply with the IDEA notice provision.").

judicial discretion, *see, e.g.*, 20 U.S.C. § 1415(i)(2)(C)(iii) (authorizing the court to "grant such

relief as the court determines is appropriate"), as well as the Supreme Court's recent holding in

*Forest Grove School District*, 2009 U.S. LEXIS 4645 (holding that the IDEA does not

categorically bar tuition reimbursement when the child had not previously received special

education through the public school).

> When a court or hearing officer concludes that a school district failed to provide a
> FAPE and the private placement was suitable, it must consider all relevant factors,
> including the notice provided by the parents and the school district's opportunities
> for evaluating the child, in determining whether reimbursement for some or all of the
> cost of the child's private education is warranted.

*Forest Grove Sch. Dist.*, 2009 U.S. LEXIS 4645, at *31. It is proper for the district court to

"consider the equities" in its analysis. *Id.*

In *Kitchelt v. Weast*, the court found that a failure by the parents to give formal notice did

not automatically bar the parents from tuition reimbursement for their unilateral private school

placement of their child. 341 F. Supp. 2d 553 (D. Md. 2004).

> The mere fact that parents may enroll their child in a private school while the IEP
> process is underway – typically in the spring or summer for the fall term – is not by
> itself proof of bad faith on their part. In the great run of cases, the parents will
> simply be bowing to reality. . . . [T]he key consideration is that the parents pursue
> in good faith the development of the IEP and the possibility of public school
> placement.

*Id.* 557 n.1. In *Kitchelt*, the court considered the equities and awarded the parents one semester

of private school tuition reimbursement despite their notice failure.

*Kitchelt* is, however, distinguishable from the present case. In *Kitchelt*, there was no IEP

in place for the new school year, and the school was found "fully responsible" for the delayed

proposal of the IEP. *Id.* at 556. In the present case, both parties contributed to the delay, and

there was a valid IEP already in place. In *Kitchelt*, the school knew "for some time" that the

parents were contemplating withdrawing their child from the public school system.  *Id.*  In the present case, it is disputed whether AACPS was aware of the Shiplers' similar intentions.

 While reimbursement in *Kitchelt* was proper because of the lack of a FAPE and the delay caused by the school board, it is not a proper remedy here.  The Shiplers approved of and signed the December 2006 IEP, attended subsequent IEP meetings, and requested further evaluation of Ethan in the spring of 2007.  (Admin. Ruling on Mots. for Summ. Decision 16.)  They signed a contract with RCS two days after the June 13, 2007 IEP meeting, denying AACPS the opportunity to address the perceived inadequacies with the services offered Ethan at HES, as well as the chance to provide input in the private school selection process.  (*Id.*)  Meanwhile, AACPS continued to complete the requested assessments of Ethan throughout the summer of 2007, but was unaware of the Shiplers' enrollment of Ethan at RCS.

The fact that the IEP team was in the process of revising Ethan's IEP does not excuse the Shiplers from the procedural requirements of the IDEA, nor does it alter the notice provision's "important purpose of giving the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a free appropriate public education can be provided in the public schools."  *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 (1st Cir. 2004), *abrogated in part by Forest Grove Sch. Dist.*, 2009 U.S. LEXIS 4645.  I find that, after an analysis of the equities, tuition reimbursement is not called for in this case.

### (3.)

While I am denying the Shiplers' claim for tuition reimbursement prior to December 2007 due to the Shiplers' failure to provide notice, a different analysis is required for the

Shiplers' claim for reimbursement of tuition after the December 2007 IEP meeting.  The Shiplers

argue that it is counter to the purpose of the IDEA to permanently absolve the school system of

its responsibility for a disabled child based upon a single procedural failure by the child's

parents.  (Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Summ. J. and Pls.' Opp'n to Defs.' Cross-

Mot. for Summ. J. ("Pls.' Reply") 5.)  I agree.  The IDEA "was intended to give handicapped

children both an appropriate education and a free one; it should not be interpreted to defeat one

or the other of those objectives." *Burlington*, 471 U.S. at 372.

On December 14, 2007, an IEP meeting was held in which AACPS proposed an IEP

recommending placement of Ethan at HES.  In accordance with Section

1412(a)(10)(C)(iii)(I)(aa), the Shiplers rejected the proposal, stated their concerns, and requested

Ethan be placed at RCS at public expense.  By so doing, the Shiplers had at that point provided

proper notice of their claim for reimbursement of private school placement, and, contrary to the

conclusion of the ALJ, their FAPE claim should be determined on the merits.

The ALJ failed to analyze this claim, finding that the Shiplers did not raise the issue of

prospective funding until their motion to reconsider the ALJ's ruling on the parties' summary

decision motions, and that the claim was therefore procedurally barred.  However, throughout

this litigation, the Shiplers have sought funding and placement of Ethan at RCS for the entire

2007-2008 school year.  I do not view their claim for funding after December 14, 2007 as part of

a new theory, but instead as part of their original claim.

Therefore, upon remand, the ALJ should determine if "both [] the public placement

violated IDEA and [] the private school placement was proper under the Act." *Florence County

Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).  Only then would the Shiplers be entitled to

reimbursement, and only for the period after December 14, 2007 when they provided appropriate notice to AACPS.

A separate order effecting the rulings made in this opinion is being entered herewith.

Date: July 23, 2009                    /s/_____

                                       J. Frederick Motz
                                       United States District Judge

14